August 4, 2017

**VIA ECF**

Magistrate Judge Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:    *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Plaintiff Waymo LLC ("Waymo") submits this letter brief in support of Waymo's motion for relief regarding the depositions of Soren Juelsgaard, Nina Qi, Cameron Poetzscher, Colin Sebern, and Don Burnette.  Specifically, Waymo seeks an order allowing Waymo to proceed with these depositions on the scheduled dates, holding open the deposition and reserving time for completion at a second deposition scheduled for a date after the Federal Circuit's ruling, with the total deposition time not to exceed seven hours on the record.

What Uber knew and when they knew it are two of the key issues in this case. (Dkt. 625 at 40:7-11). And some of the most important evidence about these key issues are the Stroz Due Diligence report, the communications between and among Uber, Stroz, Ottomotto, and the Diligenced Employees about the investigation, and the raw materials collected by Stroz from Anthony Levandowski and the other Diligenced Employees. Nevertheless, with just three weeks remaining in the fact discovery period, Waymo still does not have any of this evidence. Uber's "extensive claims of privilege" and "relentless concealment of likely probative evidence" (Dkt. 433 at 8) have succeeded in cloaking all of this key discovery from Waymo's view. Uber initially refused to even reveal the identity of Stroz. When Waymo asked for the Stroz Due Diligence Report, Uber refused. When Waymo moved to compel the Report, Uber opposed. When Judge Corley granted the motion, Uber brought its objections to Judge Alsup. Similarly, when Waymo subpoenaed Stroz, Uber served objections, then opposed the motion to compel (and moved to quash), and then appealed Judge Corley's ruling to Judge Alsup. Although Uber did not join in Mr. Levandowski's emergency appeal to the Federal Circuit, Uber did not oppose that relief either (and is likely paying Mr. Levandowski's legal fees in bringing that motion).

The Federal Circuit has scheduled oral argument on the appeal for August 11, 2017. (17-2130 Appeal 6/29/2017 text-only docket entry; 17-2235 7/21/2017 text-only docket entry.) Waymo does not know when the Federal Circuit will issue its ruling, or even whether that ruling will come before the close of fact discovery. Moreover, Uber has indicated that the volume of documents it still withholds based on its overruled privilege objections is so large – including over 700 logged documents designated "Will Produce in Full" or "In part", as well as-yet-unlogged documents such as the Stroz Due Diligence invoices – that it could take Uber up to four days after a ruling to produce it all.

In light of the number of depositions that relate to the Due Diligence investigation, as well as the uncertainty over when (and how) the Federal Circuit will rule on the pending appeal, Waymo does not have the luxury of deferring all Due Diligence-related depositions until the final day or two of fact discovery. For depositions that have significant overlap with the appealed privilege issues, such as that of Mr. Levandowski, Mr. Ron, John Gardner (Mr. Levandowski's personal attorney), Eric Friedberg (of Stroz Friedberg), Eric Tate and Rudy Kim (of MoFo), Adam Bentley (of OMM/Ottomotto/Uber), and Angela Padilla (of Uber), the parties have set dates for the final week of fact discovery and are largely in agreement about the need for flexibility based on the timing of the Federal Circuit's decision. However, for other depositions, where a larger share of the witness's knowledge is not limited to the Due Diligence issues, the parties have set dates starting next week. Depositions in this category include Soren Juelsgaard (August 9), Nina Qi (August 10), Cameron Poetzscher (August 11), Colin Sebern (August 15), and Don Burnette (August 18). Mr. Juelsgaard, Mr. Sebern, and Mr. Burnette are all "Diligenced Employees" who signed the Indemnification Agreement and were investigated by Stroz for "Pre-Signing Bad Acts" – including trade secret theft from former employers (all three are former Google employees). Mr. Juelsgaard and Mr. Burnette are also co-founders of Ottomotto. Mr. Poetzscher and Ms. Qi were both heavily involved in the negotiations with Mr. Levandowski, first meeting him to discuss a LiDAR deal in September 2015, and even reviewing documents that became exhibits to the Stroz Report before the signing of the Put Call Agreement. (Dkt. 823 at 3; 7/10/2017 Karen Dunn email.)

The relief Waymo seeks in this motion is straightforward and logical. Waymo seeks to proceed with these depositions on the scheduled dates, holding open the deposition and reserving time for a completion at a second deposition scheduled for a date after the Federal Circuit's ruling, with the total deposition time not to exceed seven hours on the record. For example, Waymo could depose Mr. Poetzscher (Uber's VP of Corporate Development) for four hours on August 11, reserving the remaining three hours for a second deposition at a date after the Federal Circuit issues its order, at which point Waymo could use up to three hours to complete the deposition, with no subject matter limitation. Waymo has not seen the Due

1

Diligence Report or its exhibits, any of the raw computer and other files provided to Stroz as part of the investigation, any of Stroz's communications with the Diligenced Employees and their attorneys, or any of the more than 700 documents still withheld on Uber's privilege logs. Waymo does not know how Mr. Juelsgaard, Mr. Sebern, and Mr. Burnette were selected to be "Diligenced Employees," while other former Google employees (such as Dan Gruver, Jur van den Berg, Rudy Espinosa, Vincent Tran, David Weikersdorfer, and co-founder Claire Delauney) were not. Waymo does not know what Stroz found out about these Diligenced Employees during the due diligence investigation, and whether those findings included the misappropriation of any Waymo trade secrets. And Waymo does not know what Mr. Poetzscher and Ms. Qi knew about the Stroz investigation, or what they were telling (and being told by) Mr. Levandowski, Mr. Gardner, and others about indemnification or Pre-Signing Bad Acts. It is therefore impossible for Waymo to determine how much deposition time it must allocate to properly examine these witnesses about evidence currently concealed by Uber's privilege assertions. Nevertheless, Waymo will attempt to reserve an appropriate amount of time for each witness.

Uber has agreed to allow Waymo to reserve time with these witnesses and re-open their depositions to ask them questions about the Stroz Diligence Report if the Federal Circuit affirms this Court's ruling. Uber insists, however, that Waymo reserve that time on penalty of preclusion if the Federal Circuit does not rule in Waymo's favor, and that Waymo limit questioning only to issues reversed by the Federal Circuit. In other words, Uber argues that if Waymo reserves time, and the Federal Circuit overturns, it will not make these witnesses available again to allow Waymo to use the rest of its seven hours. Waymo should not have to choose between fully examining these witnesses on the one hand, and reserving time to examine them on hundreds of Stroz-related documents at a second deposition on the other, while gambling on whether that second deposition will be allowed to proceed or whether Waymo will end up losing a substantial portion of the seven hours it is entitled to take (if it in fact decides to proceed with a second deposition for all of these witnesses, which it may not if the Federal Circuit reverses).[1]

Finally, postponing these five depositions is not practical, both because of the large number of depositions yet to be taken (including those requested but not yet scheduled, totaling over fifty) in the limited time remaining in fact discovery, and because there is no way to know when the Federal Circuit order will actually issue. Because these depositions will be relevant to expert reports, which are due August 24, waiting to potentially take them out of time would unduly prejudice Waymo, particularly in light of the fact that Mr. Poetzscher and Ms. Qi are expected to have testimony relevant to damages issues, and engineers such as Mr. Juelsgaard, Mr. Sebern, and Mr. Burnette are expected to have testimony relevant to liability issues. And requiring Waymo to reserve time at the risk of forfeiture if the Federal Circuit reverses the Court's rulings is manifestly unfair since these witnesses have substantial percipient knowledge unrelated to diligence issues. As one just one example, Uber has designated Mr. Poetzscher as its corporate designee on three of Waymo's ten Rule 30(b)(6) topics: No. 4 ("UBER'S acquisition of OTTOMOTTO"), No. 5 ("UBER's meetings with LEVANDOWSKI and/or OTTOMOTTO and OTTO TRUCKING before April 11, 2016"), and No. 6 ("The origin of UBER'S indemnity obligations to OTTOMOTTO, LEVANDOWSKI, Lior Ron and OTTO TRUCKING, and the current status of indemnity, including but not limited to whether UBER is indemnifying LEVANDOWSKI, Lior Ron, or OTTO TRUCKING for any claims regarding this litigation, and whether LEVANDOWSKI, Lior Ron, or OTTO TRUCKING have made any claims for indemnity with respect to this litigation.").

---

[1] While Mr. Poetzscher and Ms. Qi were deposed in the expedited phase, those depositions were not intended by the PI Order to substitute for normal depositions. Moreover, at that time Uber had not produced hundreds of relevant documents specific to these two witnesses, and even now, Uber says the production of extremely relevant documents – including related to the draft December 4 term sheet with Newco – are not yet produced, and will not be produced until next week.

Respectfully,

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven
cc:    All counsel of record; Special Master John Cooper

01980-00104/9471440.1

3